Are you June Lord? I am June Lord, I'm sorry. This case is very similar to one this court recently decided, U.S. v. Staten. It's a meth lab. There was no charge in the charging document. There wasn't any indication of this being a substantial risk of harm until a probation officer did the pre-sentence report. And adding that risk of harm raised it from 30 to 37 months, and she ended up getting 96 months. Although the district judge in this case, unlike Staten, did apply the application notes. Well, it is, you know, I do see some distinction from Staten in the sense that I think in what in, they have to go through note 20A, right? And in Staten it was just pretty, it was pretty general. The court there, I think, just emphasized, you know, didn't emphasize anything in the language and, but in this case, the district court went through each of the four note 20A factors before applying the enhancement. When looking at the transcript, I noted, the court noted that the chemicals were stored on open complex in a residential area, four units of which were occupied, and that it is, you know, that, and there were sufficient materials to manufacture 22 grams of methamphetamine. The court also noted the matter of storage created a likelihood of releasing toxins into the environment. The court noted that one of the tenants had complained about the fumes and that the garbage bag found on the basement floor contained highly toxic fumes. Finally, as to the duration of the offense, the court noted that Kip's admission that the dangerous manufacturing activities had occurred twice over a period of weeks. And with the, there's a deferential standard of review, and so my question is, with that deferential standard of review, it appears to me that this Court isn't, this is not the exact same case as the case that you cite as being controlling, that being the Staten or the Staten case. So what is your best argument with the deferential standard? Aren't you just asking us to reweigh the evidence? Well, I think that there just wasn't sufficient evidence to support this standard, this substantial risk of harm. Now, they opened the garbage bag and they said it was toxic fumes. Well, they weren't tested or anything. There wasn't any evidence showing they could be transmitted to other parts of the house. They couldn't go through the walls. Those plastic bags had probably been there for quite a while. And the other chemicals that were stored in there, just common household items, and they were closed and they were stored in the basement. I think you could find them in any shelf anywhere. Well, you know, this section, this B6B section applies, where you have a manufacturer of methamphetamine and, and a substantial risk of harm. And the Staten Court reasoned that the conjunction indicates that the substantial risk of harm must be in addition to those inherent in the manufacture of methamphetamine.  Well, I mean, it's a short period of time, and that was by her own admission. But I mean, it wasn't going on every day. No, no, no. It didn't go on. Yeah. It went on, I guess, one, even one of them was aborted. They didn't even finish it, according to the testimony at her change of plea hearing. Well, what about the neighbors, though? You know, what about doing it where you have neighbors? You know, is that different than doing it if you're in the middle of the country and you only risk yourself? What about if you have kids in the house? What about those things? Well, that would make a difference if it was actually toxic. But according to the court in Staten, generic labs, it isn't the generic labs, there is a substantial risk. But in order to be a substantial risk to somebody in that house, it has to have a way to get to them. And there was little evidence that there was anybody in the house except the people who were doing this. There was one other neighbor, and he complained. But they couldn't even tie to my recollection that he was even there much of the time, other than the one time he said he smelled. Well, he lives there, though, right? Well, he lived there for a short period of time, and that's unclear from the evidence whether he was even there at that time. Well, I guess what I'm hearing you say, that all goes to the weight. It does, yes. So aren't we reweighing as opposed to giving the deference to the district court? The district court weighed it a different way than you would weigh it. That's what we can't do, is reweigh. So that's what my concern is in your reweighing someone that was there and saw it differently than you would ask us to see it. Well, except that it was just generic. It was generic evidence. There wasn't any... Did the district court have the benefit of statin? No. That hadn't been decided at the time the district court did this. That was just lately decided. Okay. You might want to save some time. Yeah, I want to save some time for rebuttal. Good morning, Your Honors. Laurie Suk from the District of Montana. I'm an assistant United States attorney. United States v. Statin was actually a case that involved the same sentencing court that you're looking at here in United States v. Kip. And even though the district court did not have the benefit of this court's statin decision... Well, it involved the same district judge. It did. Exactly. The same district judge. And although he didn't have the benefit of statin, he did absolutely what the court said that he didn't do correctly in statin. Basically, statin reversed what he did on a legal basis. That he did not apply the mandatory provisions in the application note 28. He didn't look to those. And everything that he looked to was simply generic. He didn't make any case-specific findings. In fact, in the statin case, he really didn't review those factors at all. So you don't think statin requires a remand? Is that what I'm hearing you say? Or do you think that it does require a remand? Absolutely, it does not require a remand, Your Honor, in the United States view in this case. Because he did exactly... Did he make a finding that there was a substantial risk of harm in addition to the risks that are ordinarily involved in the manufacture of methamphetamine? Not only did he think about doing it, Your Honor, he did it by overwhelming evidence. No, no. Did he make that finding? You know, this statin case says that the conjunction indicates that the substantial risk of harm must be in addition to those inherent in the manufacture of methamphetamine. And did he say that there were substantial risks of harm in addition to those inherent in the manufacture of methamphetamine? Did he say that? He didn't use those exact words, no, Your Honor. Okay, so... He did not use those exact words. So what is the problem of just sending it back for remand and have him apply statin? What's the problem there? In the view of the United States, it's unnecessary because he complied with statin. Well, the United States does a lot of things that are unnecessary. What kind of a reason is that? Because he complied with what the court said he should do in statin, Your Honor. The view of the United States, you're correct, matters not, but the court's writing in statin... Tell me what the substantial risk of harm here was in addition to the risk inherent in the manufacture of methamphetamine. This methamphetamine operator, the case-specific findings regarding this methamphetamine operation involved toxins that were stored in a garbage bag in a basement that was accessible to all the residents of this unit. Okay, so how... That's something case-specific. So how is that, isn't that something that's also inherent in the manufacture of methamphetamine? You've got to go... No, Your Honor. You can't assume that every methamphetamine manufacturing operation takes place in a residential area, takes place in the way that it's disposed of by a garbage bag in a basement. Well, many of them do, don't they? I mean, do the guidelines say that if the methamphetamine manufacturing takes place in a residential area, that that's equivalent to substantial risk of harm? That's in the... No, but that is one... It's over and above what's inherent? That is one of the factors that you consider, though, under that guideline range, Your Honor, and before statin, that was one of the reasons to apply this application note, because it was in a residential area versus a remote area. The judge in this case did exactly what statin told him to do, even though he didn't make the exact wording finding that you've set forth, and that's why the United States believes it's unnecessary to remand. All right, thanks. See, we're 1,500 miles away, so we have to raise our voices here. I was going to say, I can hear both of you fine. Good. A little less would be better for me. A lot of it would be better for me, too, a lot of the questions. Go ahead. Your Honor, I think, number one, there was no proof that other people had access to this basement. These people had rented this as an old converted house, as I understand it. This basement was part of Debbie Kipp's rental, and they had another entrance to other parts of this converted house. So I think that's a ‑‑ I don't think the evidence supported that. But I think it should be remanded because there wasn't the facts to show substantial risk of harm. They certainly proved that there was a meth lab, because by Ms. Kipp's own admission, there was a meth lab. But there was not sufficient evidence of any substantial risk of harm to any other person other than the Cooks. Are you with the federal defenders? No, I'm not, John. I'm a panel attorney. Oh, you're a panel attorney. How come the federal defendants didn't ‑‑ how does that work there? We contract for cases where there's ‑‑ Was there conflict here? There was a conflict. They had one of the ‑‑ they probably had the Cook Seabrook. I don't remember for sure. What did you say? They probably had the Cook Seabrook, but I don't remember for sure. Okay. All right. And I don't know that he got this enhancement. So we have a consistency problem there, too. You don't know if he had what? You don't know if he had ‑‑ you say you don't know if he had something. If he got the ‑‑ Enhancement. The enhancement. That's what you were saying. He was the one that was cooking in this apartment. The other guy? Yeah. You don't know one way or the other? I don't know. But he's the one that was actually doing the cooking, apparently. He was a cook. Debbie Cook was the ‑‑ Debbie Kipp was the user of the mess after he cooked it. There wasn't any evidence that they were doing anything that would be an explosion, blow up the building or that would permeate the walls and infect people inside the building. And the government's witness wasn't an expert. He wasn't a chemist. I went through all this with him and asked him if he could identify what would be a substantial risk of harm. And he didn't know. Other than to say this was dangerous because it smelled bad. Well, a lot of things smell bad and they're not dangerous. So I would ask the court to remand this and be extant. Okay. Thank you. Let me ask the assistant U.S. attorney, Lori Souk, was there an enhancement for the cook? The cook wasn't indicted federally, Your Honor. His name was Jason Riggs, not Seabrook. Seabrook was an individual who was associated with people, but he cooked in a different place. And he did not receive an enhancement because the facts were not there to support the enhancement in his case. Well, how about the ‑‑ who was the cook here? Well, Debbie Kipp was cooking with an individual by the name of Jason Riggs. Okay. What happened to him? The United States ‑‑ he was taken by the state court, Your Honor. So he was a cook and he went to the state court? He was ‑‑ no, they were both cooking, Your Honor. Ms. Kipp was taken into federal court because her tremendous criminal history and her prior federal conviction warranted federal prosecution. Mr. Riggs had no prior criminal history and he was prosecuted by the state court. And so ‑‑ and he was cooking along with her, huh? Yes. And living in the residence as well, this multiplex unit converted house. What was his sentence? I'm just curious. I don't know, Your Honor.  That is your answer. Thank you. Okay. Anything else? That's it. Thank you. All right. Matter is submitted.
judges: Reavley , Pregerson, Callahan